IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL A. KETTS,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

3:07-cv-6312-MA

OPINION AND ORDER

KATHRYN TASSINARI
DREW L. JOHNSON, PC
1700 Valley River Drive
Eugene, OR 97401
(541) 434 6466

Attorneys for Plaintiff

KARIN IMMERGUT
United States Attorney
District of Oregon
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

TERRYE E. SHEA
Special Assistant United States Attorney
Assistant Regional Counsel Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

MARSH, Judge:

## INTRODUCTION

Plaintiff Michael A. Ketts (Ketts) seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). For the reasons that follow, I AFFIRM the final decision of the Commissioner.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to identify jobs existing in significant numbers in the national economy that the claimant can perform. Id. at 1100-01.

Ketts alleges disability beginning on June 24, 2005, due to post traumatic stress disorder (PTSD) that he incurred in combat in the Vietnam War. Ketts was 58 at the time of the administrative law judge's (ALJ's or ALJ) decision. He has completed high school

and two years of college, and has past relevant work as a loan officer at a bank. Ketts has a 70 percent service connected disability for PTSD with an Individual Unemployability rating of 100 percent from the Department of Veterans Affairs (VA).

At step one, the ALJ found that Ketts had not engaged in substantial gainful activity since his alleged onset of disability. See 20 C.F.R. § 404.1520(a).

At step two, the ALJ found that Ketts had the following severe impairments: PTSD and alcohol dependence. See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Ketts's impairments, or combination of impairments, did not meet or medically equal a listed impairment. See 20 C.F.R. § 404.1520(d).

The ALJ assessed Ketts with a residual functional capacity (RFC) to perform work at all exertional levels, but with non-exertional restrictions consisting of no contact with the general public and no close contact with co-workers. See 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1569a; Social Security Ruling (SSR) 96-8p.

At step four, the ALJ found Ketts unable to perform any past relevant work. See 20 C.F.R. § 404.1520(f).

At step five, the ALJ found that considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ketts can perform. See 20 C.F.R. §§ 404.1560(g), 404.1512(g), 404.1560(c). Accordingly, the ALJ concluded that Ketts was not disabled within the meaning of the Act.

In appealing the ALJ's decision to the Social Security Administration's Appeals Council, Ketts submitted additional evidence in the form of a letter from his treating physician, Dr. Charles Sprague and his therapist Mary Jenkins Gunn, LCSW, stating that Ketts does not have a diagnosis of Alcohol Dependence. (Transcript of Social Security Administrative Record (Tr.) at 10.) The Appeals Council reviewed the ALJ's findings and the letter and concluded that no change to the ALJ's decision was warranted. (Tr. at 5-6.)

## ISSUES ON REVIEW

On appeal to this court, Ketts contends the ALJ: (1) failed to provide clear and convincing evidence for rejecting his testimony; (2) improperly assessed the medical evidence; (3) improperly rejected lay witness testimony; and (4) improperly rejected the VA disability rating. Ketts also argues the Commissioner failed to meet its burden of proving that he could perform other work in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner’s decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). “Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Id. The court must weigh all the evidence, whether it supports or detracts from the Commissioner’s decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I. The ALJ Properly Assessed Ketts's Credibility.

Ketts argues that the ALJ failed to provide clear and convincing evidence for rejecting his testimony about the degree to which his PTSD limits his abilities. Ketts testified that he has debilitating symptoms, including an inability to get along with supervisors and co-workers, and that he is argumentative and impatient. (Tr. at 342-43.) However, the ALJ concluded that the intensity, persistence and limiting effects of Ketts's PTSD were not as severe as he alleged. (Tr. at 21.)

In deciding whether to accept subjective symptom testimony, such as pain or depression, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Here, there is no dispute that Ketts presented objective medical evidence in support of his claim of PTSD which could reasonably be expected to produce some anxiety, withdrawal and an inability to get along with co-workers. (Tr. at 21.)

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Smolen, 80 F.3d at 1284; see also Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). Clear and convincing reasons may include medical evidence tending to discount the severity of the claimant's subjective claims. Smolen, 80 F.3d at 1283. The ALJ also may consider prior inconsistent statements concerning the claimant's symptoms and any inconsistency between the claimant's daily activities and the degree of disability he alleges. See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan, 169 F.3d at 599. In doing so, the ALJ must identify "what testimony is credible and what testimony undermines the claimant's complaints." Id.; see also Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ identified numerous reasons, citing specific record evidence, for discrediting Ketts. The ALJ summarized the adverse credibility findings as follows:

> The emerging picture from all of these inconsistencies is that Mr. Ketts seems to tailor the nature and extent of his impairments to his intended audience. For the purposes of unemployment compensation, he was a willing and capable worker. For his service connected disability, he was frank about alcohol abuse, which was interpreted as drinking to numb his pain. For the purpose of his application for

> Disability Insurance Benefits, Mr. Ketts minimized his reported intake because he was informed at the onset of the hearing that alcohol dependence could be a factor in disqualifying him from receiving benefits. For both the VA and Social Security Claims, he distorted his employment history.
>
> For all of these reasons, Mr. Ketts's testimony concerning his subjective complaints and limitations was not convincing. (Tr. at 22.)

The ALJ cited inconsistencies between Ketts's subjective assertions and the objective medical evidence. The ALJ specifically pointed to a note from Dr. Sprague, Ketts's treating psychiatrist, stating that in January 2007, Ketts had no acute mental status findings and that Ketts's PTSD was at its baseline. (Tr. at 332.) Additionally, Dr. Sprague described Ketts as pleasant, despite that he paced throughout the visit. (Tr. at 332.) To be sure, when the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. Morgan, 169 F.3d at 600; Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008).

Ketts also argues that the ALJ should not have relied on evidence in his medical record that he was "not as tearful" and had better insight in 2004 and 2005 because he is asserting that his disability began June 24, 2005. His argument is of little merit. An ALJ may consider all the medical evidence in the record, including medical history, to evaluate the intensity and persistence of a claimant's symptoms. 20 C.F.R.§ 1529(c). "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." Fair v. Bowen, 885 F.3d 597, 604 (9th Cir.

1989).

Additionally, the ALJ found that Ketts's work history did not support a finding of significant on-the-job problems because of his PTSD. According to Ketts's testimony, he lost 13 jobs over the past 20 years due to an inability to get along with supervisors. However, the ALJ noted that Ketts's earnings demonstrated that he had worked for only seven employers from 1991 to 2005 and that "[m]ost of those jobs lasted at least a year and several 3 to 4 years." (Tr. at 21.) Although Ketts now argues that he was generalizing about the number of jobs he has lost over the course of his career, the ALJ's findings about his employment history are supported fully by the record. To be sure, the ALJ found it notable that his actual earnings history demonstrated no significant periods of unemployment–a fact undisputed by Ketts. And, as the ALJ correctly highlighted, Ketts earned significant sums–ranging from $39,000 to $65,000 during the years 1991 to 2005–also undisputed by Ketts. (Tr. at 51-57.) These facts clearly undermine Ketts's main argument–that his PTSD was so severe it impaired his ability to maintain gainful employment. As the ALJ found, Ketts's actual employment history simply is not consistent with significant behavior-related discharges. The ALJ's adverse credibility finding on this point is supported by substantial evidence.

The ALJ also concluded that Ketts's equivocation about and minimization of his alcohol abuse undermined his credibility. At the hearing, Ketts testified that he only had two or three drinks per week, and that that amount had been his consumption for 10 to 12 years, then he later admitted to having one or two drinks each night. (Tr. at 341-42.)

Ketts also testified that the VA records indicated a remote history of alcohol dependence because he used to drink more. (Tr. at 341.) However, the ALJ found that those statements were inconsistent with an August 2006 self-report in which Ketts described more recent excessive drinking–indicating that he drank three to four times per week and drank more than six drinks at least once monthly. (Tr. at 204.) The ALJ concluded that Ketts's testimony also was inconsistent with evidence in his medical records containing an alcohol abuse diagnosis persisting into 2007, and was contrary to his counselor's advice to stop or significantly reduce such behavior. (Tr. at 274, 285-87.)

Ketts argues here that no equivocation exists, contending that three or four drinks four or more times per week is substantially consistent with his hearing testimony that he consumed a glass of wine with dinner or had a drink or two in the evening. I agree with the ALJ that his various statements are not entirely consistent and that the ALJ could discredit Ketts on that point. Verduzzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent statements about alcohol use may be used to discredit testimony).

The ALJ also determined that Ketts's allegations about reduced concentration and problems with social functioning were undercut by his own testimony at the hearing. Ketts admitted to using the computer and reading to fill his time, activities that the ALJ noted require concentration. (Tr. at 22, 344.) Additionally, despite Ketts's alleged difficulties socializing, he admitted that he has close relationships with family, despite irritation caused by his grandchildren, and is able to interact well with his neighbors. Id. Such inconsistencies between the claimant's activities of daily living and his testimony

are an appropriate basis upon which an ALJ may rely when discrediting the claimant. Morgan, 169 F.3d at 600.

Lastly, the ALJ found that Ketts's credibility was undermined by his application for and receipt of unemployment benefits after he was fired from his job in 2005. Ketts argues that his receipt of unemployment befits does not create an inconsistency because Ketts did not profess to be available only for full-time work. The Ninth Circuit has recognized that "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime[.]" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008). But, receiving unemployment benefits *by itself* does not create an inconsistency. Id. at 1162. As the Ninth Circuit recently instructed in Carmickle, an inconsistency *may* exist if the claimant held himself out as available for full-time work. Id. As in Carmickle, a thorough examination of the record in this case does not establish whether Ketts held himself out as able to work full-time or part-time. Thus, the ALJ's adverse credibility finding is not supported by substantial evidence on this particular point. Id.

However, any such error was harmless. Carmickle, 533 F.3d at 1162; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)(applying harmless error standand; so long as substantial evidence remains supporting the ALJ's conclusions on credibility, the error does not necessarily negate the validity of the ALJ's ultimate credibility conclusion). The remaining bases upon which the ALJ relied–Ketts's actual work history, his inconsistent statements about alcohol, the discrepancies between the

medical evidence and his own report, and the discrepancies between his own activities and his alleged limitations–provide ample support, backed by substantial evidence, for the ALJ's adverse credibility finding.

II. The ALJ Did Not Improperly Reject the Opinion of the Treating Physician.

To reject the uncontroverted opinion of a treating physician, the ALJ must present clear and convincing reasons for doing so. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). "Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). However, the opinion of a treating physician is not necessarily conclusive. Morgan, 169 F.3d at 600.

In this case, the ALJ accorded the opinion of Ketts's treating physician little weight. In her decision, the ALJ made the following findings:

> As for the opinion evidence, I considered the mental residual functional capacity form completed by Dr. Sprague in November 2006. In check marking answers to assessments of function in certain work-related areas, this doctor reported that Mr. Ketts had moderately severe limitations in 3 areas and severe limitations in 5 areas. In the comment section, Dr. Sprague wrote that Mr. Ketts's ". . . level of hyperarousal, hypervigilance, exaggerated startle, anger and irritability is so significant to render him unemployable" . . . . However, this opinion does not merit much weight. In simply check marking boxes on the form, Dr. Sprague did not describe a longitudinal history of findings to support the assessed limitations. Furthermore, Dr. Sprague did not discuss the impact of alcohol abuse and dependence on Mr. Ketts's mental functioning and behavior. (Tr. at 22.)(internal transcript citations omitted.)

There is indeed a preference for detailed analysis and a longitudinal history of findings over conclusory statements. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); see also Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983). But that basis alone may not be enough to entirely reject the treating physician's opinion. However, the ALJ detailed additional reasons.

The ALJ further discredited Dr. Sprague's opinion because it was based in large part on Ketts's inaccurate self-reported employment history. In an April 24, 2007 letter authored by Dr. Sprague and Mary Jenkins Gunn in support of his disability claim, they relied on Ketts's self-reported history of unsuccessful employment attempts to conclude that Ketts's deficits in social functioning rendered him unfit to engage in future employment. (Tr. 23, 334.) As discussed above, Ketts's self-reported employment history was inconsistent with his actual employment history. A physician's opinion of disability which is premised upon the claimant's own accounts of his symptoms and limitations may be disregarded "where those complaints have been 'properly discounted.'" Morgan, 169 F.3d at 602; Fair v. Bowen, 885 F.2d at 605. Accordingly, the ALJ did not err in discrediting the treating physician based on this fact.

And, the ALJ accorded Dr. Sprague's opinion little weight because he failed to discuss the "impact of alcohol abuse and dependence on Mr. Ketts's mental functioning and behavior." (Tr. at 22.) Ketts argues now that Dr. Sprague was instructed in the mental RFC form not to include any details of alcohol abuse or dependence–instructions which are seemingly at odds with the practice in this Circuit. An ALJ is required to

consider the impact of any alcohol dependence in combination with any other impairment. Bustamonte v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(holding that the ALJ must first conduct the five-step disability analysis without separating out the impact of alcoholism). To be sure, it is "reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled." Lindsay v. Barnhart, 370 F.Supp.2d 1036, 1044 (C.D. Cal. 2005). Thus, it appears the ALJ was attempting to include that analysis, as an ALJ must, in the decision.

Ketts argues that the ALJ improperly weighed the medical evidence because he does not, in fact, have an Alcohol Dependence diagnosis. After the hearing and before the Appeals Council, Ketts submitted additional evidence in the form of another letter signed by Dr. Sprague and Ms. Gunn. The August 6, 2007 letter provides in relevant part:

> Mr. Ketts does not have a diagnosis of Alcohol Dependence. He has an earlier history of alcohol abuse episodic which is a common presentation in individuals with untreated PTSD. Mr. Ketts [sic] alcohol consumption has reduced considerably over the past three years since his PTSD treatment started at the VA. Currently, Mr. Ketts does not drink to intoxication. He has one glass of wine with dinner approximately one to two nights weekly. (Michael Ketts' [sic] wife, Ellen Ketts, has verified this in a letter written in April or May of 2007.) Mr. Kett's [sic] is not in need of Substance Abuse treatment. (Tr. at 10.)

As evidenced by the ALJ's findings with respect to Dr. Sprague (and in her adverse credibility findings), the ALJ expressed concern about the claimant's alcohol

abuse. However, I cannot say with any certainty that the ALJ would have benefitted from having an opportunity to review the additional evidence submitted between the ALJ's decision and the Appeals Council review. Cf. Vasquez v. Astrue, ____ F.3d ____, 2008 WL 4791860, *5-*7 (9th Cir. Nov. 5, 2008)(concluding that ALJ would have benefitted from evidence submitted after the hearing and before the Appeals Council where such information may have impacted the RFC determination at step four). See also 20 C.F.R. §§ 404.970(b), 414.1470(b)(permitting additional evidence to be submitted after a hearing on appeal if the evidence pertains to an issue before the ALJ).

Here, a review of the record reveals several references to a diagnosis of alcohol dependence by Ms. Gunn in 2005. (Tr. at 161-66.) The record also shows assorted references to diagnoses of alcohol dependence *and* alcohol abuse by Ms. Gunn in 2006. (Compare Tr. at 214, 299, 302 with Tr. at 204, 208, 210, 216, 218, 301). Additionally, the record reveals *numerous* references to a diagnosis of alcohol abuse by Ms. Gunn and various chart notes by Ms. Gunn stating that Ketts continues to use alcohol to numb or avoid that persist into March 2007. (Tr. at 274-75, 278). And, as discussed above, the ALJ found Ketts's testimony about his alcohol consumption was less than convincing. The fact that Dr. Sprague and Ms. Gunn do not believe that an Alcohol Dependence diagnosis continues to apply does not alter the fact that an *alcohol abuse* diagnosis remained in 2007.

I conclude that the ALJ provided clear and convincing reasons, when taken

together, for rejecting the opinion of plaintiff's treating physician.[1]

III. The ALJ Did Not Improperly Reject the VA Disability Rating.

Generally, the Commissioner must give "great weight" to the VA's disability rating of a veteran because of the marked similarity between the two federal disability programs. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). However, because the criteria used by these programs for evaluating disability are not identical, the Commissioner may give less weight to a VA disability rating by providing "persuasive, specific, valid reasons for doing so that are supported by the record." McCartey, 298 F.3d at 1076.

In this case, the ALJ provided very specific reasons for the negative evaluation of the VA's 70 percent service connected disability rating and 100 percent Individual Unemployability rating. The ALJ considered a March 8, 2006 letter submitted by Ms. Gunn in support of Ketts's VA disability rating, and the April 24, 2007 letter authored by Dr. Sprague and Ms. Gunn discussed above. (Tr. at 122-23, 334.) The ALJ concluded that the VA's "award of benefits did not differentiate between the effects of alcohol and the impact of the combat-related PTSD." Continuing, the ALJ stated:

---

[1]Ketts offers no separate analysis or separate legal basis for his contention that the ALJ erred in rejecting the opinion of Ms. Gunn, a licensed social worker and his treating therapist. Given that Ms. Gunn authored two letters in support of Ketts's disability claim with Dr. Sprague, and given that I am upholding the ALJ's decision to reject Dr. Sprague's opinion, I find no error in the ALJ's decision to reject the opinion of Ms. Gunn. See SSR 06-03p (providing that similar analysis may apply to opinions of other medical sources, such as licensed social workers, as that applied to opinions of "acceptable medical sources" identified in 20 C.F.R. § 404.1513(d)).

> Mr. Ketts consumes alcohol to the point of abuse. As a central nervous system depressant, it has an impact on mood and social functioning, precisely the areas in which Mr. Ketts claims to have disabling limitations. Mr. Ketts made no effort to distinguish the impact of the two conditions in the testimony presented at hearing. (Tr. at 23.)

Furthermore, Dr. Sprague relied on Ketts's inaccurately self-reported employment history to support his finding that Ketts's deficits in "social functioning rendered him unfit to engage in future employment" in connection with his VA disability rating recommendation. (Tr. at 23.) As discussed above, the ALJ properly discounted Dr. Sprague's opinon on that basis. Thus, the ALJ provided specific evidence, supported in the record, for giving the VA determination less weight.

IV. The ALJ Did Not Improperly Reject Lay Witness Testimony.

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d at 919; but cf. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems). The ALJ is required to account for competent lay witness testimony, and if he rejects it, provide germane reasons for doing so. Lewis, 236 F.3d at 511.

The only lay witness testimony in this record was provided by Ellen Ketts, the Claimant's wife of 10 years, in the form of a Social Security Function Report. (Tr. at 89-96.) In her decision, the ALJ noted that although Mrs. Ketts said that the Claimant was rude and abrupt with people, Ketts was able to conduct a variety of activities, such as

assisting her with babysitting the grandchildren, mowing the lawn, performing light housework, and doing laundry. (Tr. at 22.)

Ketts insists that his ability to do some household chores is not inconsistent with his PTSD–a condition that prevents him from responding appropriately to supervision and co-workers. However, in this case the ALJ considered Mrs. Ketts's evidence and found that it lent support to her RFC assessment. Here, it showed that Ketts is able to perform a wide variety of activities of daily living, and that his limiting symptoms (rudeness, abruptness, an inability to get along with people) were sufficiently addressed with her RFC determination of no public contact and limited contact with co-workers. Further, despite Ketts's allegations of limited concentration, Mrs. Ketts described activities that involved concentration such as working on the computer and watching television. It is clear that the ALJ adequately accounted for her testimony, and provided adequate reasons for rejecting it.

V. The Commissioner Met His Burden at Step Five.

At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy that the claimant can do. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting testimony from a vocational expert (VE) to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. Tackett v. Apfel, 180 F.3d at 1103-04. The hypothetical posed to the VE must accurately reflect all of the claimant's limitations. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The RFC finding and the hypothetical posed to the vocational expert included only limitations based on medical assumptions supported by substantial evidence in the record that reflected all of Ketts's limitations. These limitations were those that the ALJ found to be credible and are supported by substantial evidence in the record. It was proper for the ALJ to rely on the VE's answer. Id. at 1217-18.

**Conclusion**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __17____ day of November, 2008.

_/s/ Malcolm F. Marsh_____
MALCOLM F. MARSH
United States District Judge